UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ELAINE WANG,

    Plaintiff,

v.

HERSHA HOSPITALITY TRUST, NEIL H. SHAH, JACKSON HSIEH, DIANNA F. MORGAN, JOHN M. SABIN, JAY H. SHAH, THOMAS J. HUTCHISON III, DONALD J. LANDRY, and MICHAEL A. LEVEN,

    Defendants.

---

Civil Action No. 23-cv-08917

**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**JURY TRIAL DEMANDED**

---

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Hersha Hospitality Trust ("Hersha" or the "Company") and the members of Hersha's Board of Trustees (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Hersha by affiliates of KSL Capital Partners ("KSL").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Definitive Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on October 3, 2023 with the United States Securities and Exchange

Commission ("SEC") and disseminated to Company shareholders. The Proxy Statement recommends that Company shareholders vote in favor of a proposed transaction whereby the Company will merge with and into 1776 Portfolio REIT Merger Sub, LLC ("REIT Merger Sub"), a wholly owned subsidiary of 1776 Portfolio Investment, LLC ("Parent"), with REIT Merger Sub surviving as a wholly owned subsidiary of Parent (the "Company Merger"). Immediately preceding the Company Merger, 1776 Portfolio OP Merger Sub, LP, a subsidiary of Parent ("OP Merger Sub"), will be merged with and into Hersha Hospitality Limited Partnership, a subsidiary of the Company ("Company OP"), with Company OP as the surviving entity ("Partnership Merger" and, together with the Company Merger, the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on August 27, 2023 (the "Merger Agreement"), each Hersha shareholder will receive $10.00 in cash (the "Merger Consideration") for each Hersha share owned. Parent, REIT Merger Sub, and OP Merger Sub are affiliates of KSL.

3.  As discussed below, Defendants have asked Hersha's shareholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs"), in support of its fairness opinion.

4.  It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's shareholders prior to the forthcoming shareholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Hersha's shareholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction), as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, an owner of shares of Hersha stock and has held such shares since prior to the wrongs complained of herein.

10. Individual Defendant Neil H. Shah has served as a member of the Board since January 2023 and is the President and Chief Executive Officer of the Company.

11. Individual Defendant Jackson Hsieh has served as a member of the Board since June 2017.

12. Individual Defendant Dianna F. Morgan has served as a member of the Board since April 2010.

13. Individual Defendant John M. Sabin has served as a member of the Board since June 2003.

14. Individual Defendant Jay H. Shah has served as a member of the Board since January 2006.

15. Individual Defendant Thomas J. Hutchison III has served as a member of the Board since September 2008.

16. Individual Defendant Donald J. Landry has served as a member of the Board since April 2001.

17. Individual Defendant Michael A. Leven has served as a member of the Board since May 2012.

18. Defendant Hersha is a company incorporated under the laws of Maryland and maintains its principal offices at 44 Hersha Drive, Harrisburg, Pennsylvania 17102. The Company's stock trades on the New York Stock Exchange under the symbol "HT."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.     The Proposed Transaction**

21. Hersha is a self-advised real estate investment trust in the hospitality sector and owns and operates luxury and lifestyle hotels in urban gateway and regional resort markets. The Company's twenty-five hotels totaling 3,811 rooms are located in New York, Washington,

DC, Boston, Philadelphia, South Florida, and California. Hersha's portfolio consists of high RevPAR and high EBITDA growth hotels in innovation-driven gateway markets and high barrier resort locations. The Company's segmented local clusters provide immediate operational advantage and local knowledge to drive outperformance in each of its core markets.

22. On August 28, 2023, the Company announced the Proposed Transaction:

> PHILADELPHIA and DENVER, Aug. 28, 2023 (GLOBE NEWSWIRE) -- Hersha Hospitality Trust (NYSE: HT) ("Hersha" or the "Company"), owner of luxury and lifestyle hotels in coastal gateway and resort markets, and KSL Capital Partners, LLC ("KSL"), a leading investor in travel and leisure businesses, today announced a definitive merger agreement, entered into on August 27, 2023, under which affiliates of KSL will acquire all of the outstanding common shares of Hersha for $10.00 per share in an all-cash transaction valued at approximately $1.4 billion. The purchase price represents a premium of approximately 60% over Hersha's closing share price on August 25, 2023, the last full trading day prior to this announcement.
>
> Mr. Jay H. Shah, Hersha's Executive Chairman, stated: "This transaction provides our shareholders with immediate and certain value at a substantial premium to our public valuation. Following a multi-year comprehensive review by the independent Transaction Committee of Hersha's Board of Trustees, the Board and management team are confident this step will allow us to deliver value for our shareholders while refocusing on growing the business over a longer period of time."
>
> Mr. Neil H. Shah, Hersha's Chief Executive Officer, added: "We are proud of the work our team has done to build on Hersha's culture and capabilities and make the company what it is today. This transaction is a result of our deliberate actions to focus on key gateway markets and lifestyle and leisure properties, as well as our work to create a concentrated portfolio consisting of some of the highest quality hotels in their respective markets."
>
> Mr. Marty Newburger, Partner at KSL, stated: "Hersha and its team have built an impressive, curated portfolio of experiential luxury and lifestyle hotels and resorts in strategic markets. With KSL's extensive track record investing in high-quality assets in dynamic metropolitan markets across North America and around the world, we are uniquely suited to position the business for further success over the long term."

**Transaction Details**

Under the terms of the merger agreement, which has been unanimously recommended by the independent Transaction Committee of Hersha's Board of Trustees and unanimously approved by Hersha's full Board of Trustees, Hersha shareholders will receive $10.00 in cash for each common share they own, and holders of Hersha's 6.875% Series C Cumulative Redeemable Preferred Shares, 6.50% Series D Cumulative Redeemable Preferred Shares and 6.50% Series E Cumulative Redeemable Preferred Shares will receive $25.00 in cash, plus any accrued and unpaid dividends to which they are entitled, for each preferred share they own. The transaction is expected to close in the fourth quarter of 2023, subject to customary closing conditions, including approval by the holders of a majority of Hersha's outstanding common shares as set forth in the merger agreement. Certain members of Hersha's executive management team and certain of their affiliated trusts have signed separate voting agreements under which they agreed to vote certain Hersha shares controlled by each of them in support of the proposed transaction. Subject to and upon completion of the transaction, Hersha's common shares and preferred shares will no longer be listed on any public securities exchange.

**Advisors**

Goldman Sachs & Co. LLC is serving as exclusive financial advisor and Latham and Watkins LLP and Venable LLP are serving as legal advisors to the Transaction Committee of Hersha's Board of Trustees. Hunton Andrews Kurth LLP is serving as legal advisor to Hersha. Wells Fargo and Citigroup are serving as financial advisors and Simpson Thacher & Bartlett LLP and Miles and Stockbridge P.C. are serving as legal advisors to KSL. Additionally, Wells Fargo and Citigroup provided a debt financing commitment to KSL in connection with the transaction.[1]

\* \* \*

23. The Board unanimously agreed to the Proposed Transaction. It is therefore imperative that Hersha's shareholders are provided with the material information that has been

---

[1] *Hersha Hospitality Trust to be Acquired by KSL Capital Partners*, PR NEWSWIRE (Aug. 28, 2032), https://www.globenewswire.com/news-release/2023/08/28/2732505/0/en/Hersha-Hospitality-Trust-to-be-Acquired-by-KSL-Capital-Partners.html.

omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming shareholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

24.     On October 3, 2023, Hersha filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's shareholders and solicits the shareholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

25.     The Proxy Statement fails to provide material information concerning financial projections created by Hersha management and relied upon by Goldman Sachs in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company that are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Goldman Sachs to aid them in forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Hersha management provided to the Board and Goldman Sachs. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's

7

inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-03 (Del. Ch. 2007).

26. For the Company Projections, the Proxy Statement provides values for the non-GAAP (Generally Accepted Accounting Principles) financial measures: Gross Operating Profit, Consolidated Adjusted Corporate EBITDA, and Unlevered Free Cash Flow, but fails to provide line items used to calculate these measures *and/or* a reconciliation of the non-GAAP measures to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

27. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied upon by a board of trustees to recommend that shareholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28. The SEC has noted that:

> [C]ompanies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other

8

    non-discretionary expenditures that are not deducted from the measure.[2]

29. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP measures included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Goldman Sachs' Financial Analyses*

30. With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the illustrative terminal values for the Company; (ii) the inputs and assumptions underlying the range of perpetual growth rates of 1.3% to 4.4%; (iii) the inputs and assumptions underlying the discount rates ranging from 9.00% to 11.00%; (iv) the weighted cost of capital of the Company; (v) the inputs and assumptions underlying the EBITDA multiples ranging from 9.5x to 11.5x; (vi) the Company's net debt; and (vii) the number of fully diluted outstanding shares of the Company.

31. With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) the implied enterprise value for the Company as of December 31, for each of the calendar years 2023 through 2025; (ii) the inputs and assumptions underlying the range of EV/Adjusted EBITDA multiples of 9.5x to 11.5x; (iii) the Company's net debt for each of the calendar years 2023 to 2025; (iv) the projected year-end number of fully diluted outstanding Company common stock for each as of calendar years 2023 to 2025; (v) the cumulative dividends per Company Common Share expected to be paid to

---

[2] U.S. Securities and Exchange Commission, *Non-GAAP Financial Measures*, last updated Apr. 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

shareholders through the end of each of the calendar years 2023 to 2025; (vi) the inputs and assumptions underlying the illustrative discount rate of 12.0%.

32. With respect to Goldman Sachs' *Premia Paid Analysis*, the Proxy Statement fails to disclose: (i) the twenty-three acquisitions reviewed by Goldman Sachs; and (ii) the premia paid in each of the acquisitions.

33. With respect to Goldman Sachs' *Selected Publicly Traded Companies Trading Multiples* analysis, the Proxy Statement fails to disclose the financial measures and multiples for each company selected by Goldman Sachs for the analysis.

34. With respect to Goldman Sachs' *Sum of the Parts Analysis*, the Proxy Statement fails to disclose the basis for applying the ranges of multiples to apply to 2023E EBITDA of 12.0x to 14.0x for the Company's adhesives, sealants, and additives segment; 8.0x to 10.0x for the Company's industrial tapes segment; and 9.0x to 11.0x for the Company's corrosion protection and waterproofing segment.

35. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

36.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

38.     Defendants have issued the Proxy Statement with the intention of soliciting shareholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's shareholders vote in favor of the Proposed Transaction.

39.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders, although they could have done so without extraordinary effort.

40.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were

negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

41. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

42. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43. The Individual Defendants acted as controlling persons of Hersha within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Hersha, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of Hersha, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to

and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Hersha and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

46. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49.   Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.   Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.   Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.   Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.   Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.   Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: October 11, 2023                                 **WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

/s/ *Benjamin Y. Kaufman*
Benjamin Y. Kaufman
Rourke C. Donahue
270 Madison Avenue

                New York, NY 10016
                Telephone: (212) 545-4620
                Fax: (212) 686-0114
                kaufman@whafh.com
                donahue@whafh.com

*Attorneys for Plaintiff*